## Scranton Gas & Water Company v. Sturgess, Appellant.

*Water companies—Water rates—Water meters—Proof of quantity supplied—Evidence.*

In an action by a water company against a customer to recover for water supplied, the record of the water meter is not conclusive upon the defendant, although the company offers proof that the meter was of standard design, properly made and duly tested after the dispute with the defendant had arisen. In such a case the defendant may show that although his premises were extensive as alleged by the water company, yet that during a large part of the period charged for, defendant and his family had been absent, his mansion house closed, his barn unoccupied, and that but little sprinkling had been done because of the wet and showery condition of the weather. The defendant may also show that the water company during the next succeeding period had installed another meter on defendant's premises, and that the readings of this meter were corroborative of defendant's claim that some error must have existed either in the former meter, or in its reading by the plaintiff's employee.

Argued March 7, 1911. Appeal, No. 30, March T., 1911, by defendant, from judgment of C. P. Lackawanna Co., May T., 1910, No. 172, on verdict for plaintiff in case of The Scranton Gas & Water Company v. E. B. Sturges. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Assumpsit for water rates. Before EDWARDS, P. J.

At the trial, Arthur Car, defendant's caretaker, testified

that defendant's family left the house on May 12, 1909, and that the water was shut off. And that no water was used in the house after May 12, 1909, until December 6, and that the barn was not used, but was closed. That the water was used after the family left, at the gardener's cottage, and to water pot plants and flower beds for about one and one-half hours. He looked for leaks in the pipes and found none. That he did not water the lawn and garden because it was raining.

The witness also testified that he cut off a syphon and used a hand pump instead.

" Q. Just state how you used the water from June 21, 1909? A. I used it for my flower beds all around, and perhaps once a week during the very dry season; we had dry season for about a month after that; perhaps once a week, and it would take three days, and after I got around for the three days I wouldn't touch it again for a week, I would trust to the rain. I used it for five or six times maybe during the season after the new meter was put in in July, that would be on the new meter. Q. How did you run your sprinkler, full force? A. No sir; not full force; you would break the hose if you did. Q. I don't know that I get just how often you did sprinkle? A. About six times, I should think. Q. Six times how often, during what period? A. About every week I would go over the lawn, it would take me two days to go over it, that is during the dry season. Q. What other use did you make, did you sprinkle your garden at any time? A. My vegetable garden? Q. Yes? A. No, not during the summer. Q. In your judgment how much more water did you use if more during the summer than you did during the period from April until June 21?"

Mr. Warren: We object to that, first, because the witness is not competent, and second, he has no standard of measurement, and third, it is a mere guess, and fourth, it is incompetent and immaterial.

The Court: I sustain the objection.

Exception noted for defendant and bill sealed. [4]

"Q. During the summer immediately after June 21, will you state to the court and jury how you used water, whether you used more or less than you did during the time from April to June 21?"

Mr. Warren: I object to the question as immaterial and incompetent.

The Court: That is asking for a conclusion. I sustain the objection.

Exception for defendant and bill sealed. [5]

Mr. Price: We propose to prove by the witness on the stand, Wm. C. Clark, that the Scranton Gas & Water Company installed a meter on the premises of Mrs. Boies in the seventeenth ward of the city of Scranton, in the spring of 1909, or winter; that knowledge came to Mrs. Boies or those in charge of the premises that an excessive amount of water was registered by the meter; that the company sent an inspector twice without making any change; then complaint was made to the company, and a third inspector sent, or some person sent for the third time; then it was discovered by this inspector that the meter had been set in the reverse, that is the intake had been put where the outlet ought to be and that was corrected.

Mr. Warren: What is the legal purpose of the offer?

Mr. Price: This is for the purpose of showing that mistakes are made in setting meters. To be followed by evidence that mistakes have been made in bills which will be produced.

Mr. Warren: Do you mean bills of other people?

Mr. Price: Yes, bills of other people.

Mr. Warren: We object to this as clearly incompetent and immaterial and no relation whatever to this issue, and plainly improper evidence.

The Court: I sustain the objection.

Exception noted for defendant at whose request a bill is sealed. [6]

Mr. Price: The counsel for the defendant offer in evidence the bill for the next quarter after June 21, 1909;

206 SCRANTON G. & W. CO. *v.* STURGESS, Appellant.

Statement of Facts—Opinion of the Court. [47 Pa. Superior Ct.

for the purpose of showing a very large decrease in the bill; with an offer to follow it by proof of the bills rendered since, which were about the same amount and which have been paid.

Mr. Warren: We object to this as immaterial, irrelevant and incompetent, having no bearing upon the case; it does not tend to establish any defense to the bill which is in dispute.

The Court: I sustain the objection.

Exception noted for defendant at whose request a bill is sealed. [7]

Mr. Price: We offer in evidence bills against Mr. Sturges for the quarter beginning June 21, until September 21, 1909, showing that from June 21 until July 19, the old meter registered 54,910 gallons, and that from July 19, until September 21, 1909, the new meter registered 58,400 gallons; the total amount being 113,310, and the bill at 25 cents for the first 30,000 gallons, and at 20 cents for the remainder, was $24.15.

Mr. Warren: I object to the offer as incompetent and immaterial.

The Court: Objection sustained.

Exception noted for defendant at whose request a bill is sealed. [8]

Verdict and judgment for plaintiff for $93.84. Defendant appealed.

*Errors assigned* among others were (1–3) portions of charge referred to in the opinion of the Superior Court and (4–8) rulings on evidence quoting the bill of exceptions.

*Samuel B. Price*, with him *Cole B. Price*, for appellant.

*Everett Warren*, with him *Henry A. Knapp* and *Charles P. O'Malley*, for appellee.

OPINION BY HEAD, J., July 13, 1911:

The plaintiff sued to recover $86.69, the price at rates

about which there is no dispute of 425,960 gallons of water alleged to have been delivered to defendant on his premises between April 6, 1909, and June 21, following.   Of course the right of the plaintiff to recover that sum depended upon its ability to prove to the satisfaction of the jury that it had actually delivered the quantity of water mentioned.   If the defendant was able to prove enough to break down, in the minds of the jury, the conclusion that so much water had been delivered, then the sum primarily sued for could not be recovered and the plaintiff's first line of attack had failed.

But there was nothing in the form or nature of the action or in the pleadings to prevent the plaintiff recovering a less sum for such quantity of water as it could show it had actually delivered.   Again, however, the burden was upon it to establish by the weight of all the evidence the quantity of water delivered so that a verdict in its favor could rest upon a substantial foundation.

On the trial, the plaintiff, to convince the jury that it had delivered the quantity of water claimed, relied chiefly on the testimony of the meter it had installed on the defendant's premises.   To strengthen this testimony, the plaintiff, as part of its case in chief, produced evidence tending to prove that the meter was of standard design; that it was well constructed mechanically; that after this dispute had arisen it had been subjected to accepted tests to determine its accuracy and had been found to be in proper working order.   Still further it offered evidence to show to the jury the extent and character of the premises of the defendant, the number of buildings thereon, and the manner in which they were equipped to use water, the size of the lawn and garden, the capacity of the sprinkler, used to water them and other like facts, all intended to strengthen the conclusion that the meter had truly registered, and thus to establish the plaintiff's claim.

The defendant produced no expert witness to directly assail the propositions that the meter was of approved design and well constructed mechanically.   Was he

thereby estopped from challenging the correctness of the conclusion that he had actually received from the plaintiff the quantity of water sued for? We know of no recognized principle of evidence that would warrant a court in so holding. The history of mechanical invention would have to be rewritten before we could eliminate from it the painful gaps during which even the keen eye of the creator of the idea could not discern the hidden reason why the practical results of the concrete machine failed to measure up to those foreshadowed by the abstract conception.

The defense to the claim was along these lines. The defendant was but a private consumer; the charge against him was for an average daily consumption of above 5,200 gallons of water. True, the plaintiff had undertaken to show that the premises served were extensive and so arranged that a large use of water was to be expected. But the defendant replied by evidence that during a large part of the period· charged for the defendant and his family were absent and the mansion house on the premises closed; that the part of the barn building which had been prepared so that it could be occupied by some of those in the defendant's service had not been in fact occupied, so that nothing could be predicated of the fact that it was provided with facilities to use water; that during a large part of the period charged for the weather was wet and showery, and there was no occasion to use water outside of the cottage occupied only by the caretaker and his wife.

Unless then some species of infallibility was to be attributed to the testimony of the meter, evidence of this character was properly admitted by the learned trial judge because its tendency was to create in the minds of the jury a conviction that no such amount of water as the plaintiff claimed had been actually delivered. It cannot be successfully argued, as we view it, that such testimony should have been rejected merely because it failed to point out whether the fault was in the design of the meter; in its construction; in some temporary obstruction to its accurate operation; or in some mistake

in observation or inference of those who read and tested it. No such burden was on the defendant.

The large quantity of water claimed for could not have been received by the defendant without the intervention of some human agency and without leaving some visible manifestation of its presence on the premises. The evidence does not disclose any indication of any leak in the defendant's system of pipes or other means by which a large quantity of water could have gotten away unobserved. True, the plaintiff was under no obligation to show by proof what became of the water after it was delivered into the private lines of the defendant, but it was obliged to satisfy the jury under all the evidence that it had actually been delivered. If, for instance, the caretaker, who for a considerable period alone had control of all openings on the premises, had been able to testify that not a single faucet had been open and not a drop of water used, the learned trial court could not have rejected the testimony. Such evidence might have seemed incredible to many persons under all the other facts in the case, but with it in the case, the conclusion reached, by the aid of the meter and those who read and tested it, would necessarily have been subjected to the same ordeal as all other testimony even when derived from the highest human sources, namely: it must have been submitted under fair and proper instructions to a jury.

The industry of able counsel, together with considerable independent research by the court, has failed to discover any decision of our courts of last resort in a case precisely similar to the one before us. But in Poole v. Paris Mountain Water Co., 81 S. Car. 438, the supreme court of that state indicated the importance and value of testimony of the character of that now presented by the defendant as against an adverse claim resting on the reading of a water meter. It is true, as argued by the learned counsel for the appellee, that was not an action at law for the recovery of a water rate. There, however, as here, the water company claimed from the consumer a sum for

an amount of water which the consumer alleged had never been received. The water company, not bringing suit for its bill, sought to enforce its payment indirectly by shutting off the supply of water. The consumer filed a bill in equity to compel the restoration of the water supply. The court below refused to grant the relief prayed for, following apparently the same theory here adopted by the appellee and the learned court below. The consumer had offered evidence tending to show that his house was small and his family not numerous; that he kept no live stock; and that there was no greater consumption of water than for his own family use. The supreme court, in reversing the circuit court, declared that the exact question before it was not to ascertain whether or not the water company had truly delivered the amount of water it claimed, but whether there existed between the parties a substantial and honest dispute on that subject. It held that evidence of the character indicated was sufficient to show that there was such dispute, and as a consequence the action of the company in shutting off the supply was arbitrary and unwarranted. But if testimony of the kind indicated did point to the fact of a substantial dispute between the parties, it must follow that upon a trial of that dispute such evidence must have been fairly submitted to the jury as tending to establish a good defense even against the reading of the water meter.

The appellant complains in the first three assignments of error that the learned trial court, after admitting his evidence to which we have alluded, deprived him of any benefit from it by giving practically binding instructions in favor of the plaintiff. "There is no testimony produced on behalf of the defense that is definite enough for me to submit to you as to the correctness or accuracy of the registration made by the meter of the quantity of water that went through it," said the learned judge, and this is elaborated and repeated throughout the charge. A reading of the whole of it demonstrates that in the view of the learned court the defendant was bound to assume

the burden of proving exactly how much water he did receive, or else be concluded by the reading of the meter no difference how greatly that might be at variance with other facts established by the evidence in the case. The defendant was not an actor in any issue that required him to carry such a burden. He was sued for the price of a definite quantity of water. He denied that he had received it. If by reason of the facts he put in evidence the jury were unable to find that he had received so much, then the plaintiff could not recover the full amount sued for. If it asked for a less sum, the burden was still on it to convince the jury that it had delivered the water to be paid for by the verdict it claimed. The first, second and third assignments are sustained.

The fourth assignment is dismissed. Most of the evidence referred to in that assignment was actually admitted. The question that was excluded was one inviting the witness to determine for the jury how much more water was used during the later summer than during the period covered by the action. There was no preliminary testimony to show that the witness was qualified to give an opinion on that subject which would be more valuable than the jury themselves could draw from the same facts on which he would be obliged to rest any estimate he would offer.

The fifth assignment would at first blush seem to have more merit, but any error in the rejection of the testimony there complained of was cured later by the subsequent action of the court in admitting the portion of the defendant's offer covering practically the same subject. The assignment is dismissed.

We think the learned court below was right in holding that the testimony which is the subject of the sixth assignment tended to introduce a collateral issue, and as a consequence that assignment is dismissed.

The seventh and eighth assignments may be considered together. There was evidence as to the nature, character and extent of the use of the water during the remainder

of the summer subsequent to June 21. There was also evidence that another meter had been installed on the defendant's premises by the plaintiff and the offer was to prove the readings of that meter during the subsequent period for the purpose of corroborating the general testimony of the defendant and convincing the jury that some error must have existed either in the former meter or in its reading by the plaintiff's employee. We are of the opinion, for the reasons already indicated, that such evidence was fairly pertinent to the issue involved and tended to establish the defense set up. It accordingly should have been received, and the seventh and eighth assignments are sustained.

Without discussing in detail the remaining assignments we deem it sufficient to say that we discover no reversible error in any of them and they are dismissed.

We are not unmindful that the problem of furnishing an adequate supply of good water to our large city communities is one of constantly increasing magnitude and perplexity, nor of the vexatious difficulties that may arise if consumers can successfully interpose trivial and unreasonable defenses to just claims of water rates. These difficulties, however, in kind if not in number, attend upon other lines of business and these considerations do not warrant us, in our judgment, in creating new rules of evidence for a particular class of cases.

Judgment reversed and a venire facias de novo awarded.